UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AMAR BELL,
                             Plaintiff,

    v.                                                                           9:06-CV-544
                                                                                 (NAM/GJD)
DONALD J. BEEBE, et al.,
                             Defendants.
_____

APPEARANCES:                                            OF COUNSEL:

Amar Bell
02-A-1762
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562
Plaintiff, *Pro Se*

Office of the New York State Attorney General     David M. Finkelstein, Esq.
The Capitol
Albany, NY 12224

**Hon. Norman A. Mordue, Chief U.S. District Judge**

# ORDER

In this *pro se* civil rights complaint, plaintiff, an inmate in the custody of New York State Department of Correctional Services (DOCS), alleges that he was assaulted and then denied proper medical care in violation of his Eighth Amendment right to be free from cruel and unusual punishment. (Dkt. No. 1). Plaintiff also alleges that defendant Julie Daniels, the Inmate Grievance Program (IGP) Supervisor, did not properly process plaintiff's grievance regarding the alleged assault. (Dkt. No. 1 at ¶¶ 13-14).

Presently before the Court is defendant Daniels' motion to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(6). (Dkt. No. 32). For the following reasons, this Court agrees with defendant Daniels and will dismiss the complaint as against this defendant.

**DISCUSSION**

**1.    Motion to Dismiss**

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (citing *inter alia Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The court must accept the material facts alleged in the complaint as true. *Id*. (citing *Cooper v. Pate,* 378 U.S. 546 (1964)(per curiam)).  In determining whether a complaint states a cause of action, great liberality is afforded to *pro se* litigants. *Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)(citation omitted).

**2.    Facts**

In this civil rights complaint, plaintiff names various corrections officers, a nurse, a physician's assistant, and a doctor.  Plaintiff alleges that on February 12, 2006, he requested "emergency sick call." Compl. ¶ 1 (Dkt. No. 1).  Plaintiff claims that twenty minutes later, defendant Raliston arrived with a stretcher, but that when plaintiff arrived at the hospital, he was placed in an examination room and assaulted by defendants Raliston, Hover, Brown, and Mulcahy. Compl. ¶¶ 2-3.  Plaintiff claims that defendants Nurse Harris and Physician's Assistant Nesmith stood nearby and watched the assault. Compl. ¶ 3.

Plaintiff states that he was later escorted back to his housing unit, but was again assaulted by defendants Raliston, Beebe, and Mulligan. Compl. ¶¶ 5-6.  Plaintiff claims that defendant Murray arrived after the assault and "called it a 'use of force.'" Compl. ¶ 7.  Defendant Murray then ordered a "spit mask," but plaintiff claims that the mask was put on incorrectly so that it acted as a blindfold. Compl. ¶¶ 7-8.  Plaintiff then alleges that he was escorted to another room

2

where he was again assaulted by defendant Raliston. Compl. ¶ 8.

Plaintiff claims that on February 16, 2006, he was taken to the facility hospital and examined by defendant Nesmith and defendant Dr. Whalen. Compl. ¶ 10. Plaintiff states that Dr. Whalen told plaintiff that the assault[1] was plaintiff's fault and sent him out of the office. Compl. ¶ 11. Plaintiff claims that he "signed up" for sick call on many occasions, but did not receive any medical attention for his injuries.[2]

Finally, plaintiff alleges that defendant Julie Daniels, the Inmate Grievance Program (IGP) Supervisor, was "deliberately indifferent" to plaintiff by failing to "equally process" his grievance. Compl. ¶ 13. Plaintiff claims that defendant Daniels failed to file plaintiff's grievance complaint "as an emergency," in accordance with DOCS Directives. Plaintiff alleges that defendant Daniels' actions showed that she was using the grievance procedure in a corrupt, "sadistic," and retaliatory way against plaintiff. Compl. ¶ 14. Plaintiff appears to allege that he complained about defendant Daniels' behavior on several occasions to Superintendent Gary Greene; Deputy Commissioner of Programs, John Patterson; IGP Director, Thomas Eagen; former Attorney General, Eliot Spitzer; and Alan Croce from the State Commission of Correction.

---

[1] The complaint is unclear regarding what Dr. Whalen was blaming on plaintiff. The exact language in the complaint states that "Timothy Whalen MD stated thats [sic] my fault then kicked me out [sic] his office and said I threatened by speaking of Public Health Law." Compl. ¶ 11. It appears that plaintiff is trying to claim that Dr. Whalen told plaintiff the assault was his fault and then told plaintiff to leave his office. Plaintiff may also be claiming that Dr. Whalen accused plaintiff of "threatening" the doctor by mentioning violations of the Public Health Law.

[2] The Court notes that some of the dates that plaintiff claims to have been denied treatment for his injuries are ***prior to the alleged assaults on February 12 and 16, 2006.*** Compl. ¶ 11. Plaintiff has listed dates in January and early February of 2006. He also lists dates as late as November and December of 2006. *Id.* In paragraph 12 of the complaint, however, plaintiff admits that he saw Dr. Whalen "36" days "later." Compl. ¶ 12.

Compl. ¶ 14.

Plaintiff's complaint contains various causes of action.  He alleges cruel and unusual punishment in violation of the Eighth Amendment against the defendants who allegedly assaulted him, and he claims failure to protect against defendants Nesmith and Harris, who allegedly stood nearby and watched the assault. Compl. at p.5.  Plaintiff also alleges deliberate indifference to his serious medical needs, and finally, plaintiff alleges that defendant Daniels did not adequately process one of plaintiff's grievances and did not allow plaintiff to exhaust his administrative remedies "as an emergency."[3] *Id.*  Defendant Daniels now moves to dismiss plaintiff's complaint against her for failure to state a claim.

### 3. **Failure to "Timely" Process Grievances**

Defendant Daniels is mentioned only in paragraphs 13 and 14 of the complaint and in the "Fourth Cause of Action."  In the body of the complaint, plaintiff states that defendant Daniels did not properly process plaintiff's grievance # 40101-06 "as an emergency."  Compl. ¶ 13.  Plaintiff uses the words "deliberate indifference." *Id.*  In the "Fourth Cause of Action," plaintiff repeats the term "deliberate indifference" in claiming that defendant Daniels did not let plaintiff "timely" exhaust his administrative remedies "as an emergency," in violation of the DOCS Directive # 4040. Compl. at p.5.

In her motion to dismiss, defendant Daniels argues that plaintiff does not state a constitutional claim because the grievance program is not constitutionally required, and regardless of his allegations, it is clear that plaintiff was able to use the prison grievance process,

---

[3] Plaintiff does not cite any constitutional provisions upon which he bases his claim against defendant Daniels; thus, the Court must attempt to determine what possible claims plaintiff might have in this cause of action.

4

so he suffered no prejudice as a result of defendant Daniels' alleged actions. Def. Mem. of Law at 3-4. The complaint is not a model of clarity. Because of the liberality with which *pro se* actions are to be considered, this Court will attempt to determine what possible claims plaintiff might be attempting to raise.

### A. Procedural Due Process

Although plaintiff states that defendant Daniels' action prevented plaintiff from exhausting his "administrative remedies timely within the scope of Directive # 4040 as an emergency," plaintiff does not, and cannot, claim that he was prevented from bringing a grievance. Plaintiff lists three grievances that he filed, together with the numbers that were assigned to those grievances. In the claim against defendant Daniels, plaintiff refers to one particular grievance (# 40101-06) that she allegedly did not allow plaintiff to file as an "emergency" in violation of DOCS Directive # 4040.

In an effort to establish what plaintiff's complaint might be, the Court will review the grievance procedures. The regular Inmate Grievance Program (IGP) consists of a three-tiered process. *Hemphill v. State of New York*, 380 F.3d 680, 682 (2d Cir. 2004). The inmate must first file a grievance with the Grievance Clerk, and the grievance will first be decided by the Inmate Grievance Resolution Committee (IGRC). *Id.* § 701.5(a)(1) & (b).[4] An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id.* § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee (CORC). *Id.* § 701.5(d). Time deadlines apply at all levels of the process, but exceptions to any of the

---

[4] The Court notes that the NYCRR sections governing the Inmate Grievance Procedure appear to have been re-numbered in June of 2006. This Court has cited the current versions of the NYCRR sections. They do not necessarily match the sections cited in *Hemphill*.

5

deadlines may be made based on "mitigating circumstances." *Id.* § 701.5(a)(1). An inmate must appeal any denial of his grievance to the highest available administrative level. *Martinez v. Williams*, 349 F. Supp. 2d 677, 682 (S.D.N.Y. 2004).

There is also an ***expedited*** process for the review of complaints of inmate harassment[5] or other misconduct by corrections officers or prison employees. 7 NYCRR § 701.8. Under this procedure, the inmate may (but is not required to) report the misconduct to the employee's supervisor. *Id.* § 701.8(a)(Note). The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the Superintendent for review. *Id.* § 701.8(a) & (b).

Under the regulations, the Superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house", by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations. *Id.* § 701.8(c) & (d). An appeal of the adverse decision of the Superintendent may be taken to the CORC as in the regular grievance procedure. *Id.* § 701.8(h). A similar "special" procedure is provided for claims of discrimination against an inmate. *Id.* § 701.9.

In this case, plaintiff claims that defendant Daniels did not let plaintiff exhaust his grievance as an "emergency." The regulations provide that the ***Superintendent***, not the IGP Supervisor, makes the determination of whether a grievance is a bona fide "harassment"

---

[5] A "harassment" grievance is defined in 7 NYCRR § 701.2(e) as a grievance that alleges employee misconduct meant to annoy, intimidate, or harm an inmate. Allegations that an employee assaulted an inmate would fit into this category.

6

grievance,[6] so plaintiff may not be referring to this expedited method of review.

Although plaintiff's complaint is unclear, the reference to "emergencies" in the regulations appears in 7 NYCRR § 701.6(m). This section provides that the IGP Supervisor[7] "shall refer any grievance of an emergency nature directly to the appropriate response level (superintendent or CORC) having authority to issue an immediate or expeditious and meaningful response." *Id.* The regulation states that an emergency "shall include, but is not limited to, a situation, action, or condition in which an inmate's or an employee's health, safety, or welfare is in serious threat or danger. The supervisor will determine if a grievance falls within this category." *Id.* Emergencies are separate from harassment grievances since emergencies may include many things that are *not* associated with employee misconduct. Plaintiff may be claiming that defendant Daniels did not agree that plaintiff's grievance was an "emergency" and failed to process it as such.

Regardless of how plaintiff claims that the alleged error was made, courts have consistently held that because grievances procedures are undertaken voluntarily by New York and other states, they are ***not constitutionally required***. *See Ramos v. Hanslmaier*, 96 Civ. 744, 1997 U.S. Dist. LEXIS 6082, *6-7 (S.D.N.Y. Feb. 19, 1997)(multiple citations omitted). *See also Bullock v. Horn,* CV-99-1402, 2000 U.S. Dist. LEXIS 21573, *22-23 (M.D. Pa. 2000)(plaintiff claimed improper refusal to process grievance); *Hoover v. Watson*, 886 F. Supp. 410, 418-19 (D. Del.), *aff'd*, 74 F.3d 1226 (3d Cir. 1995); *Muhammad v. McMickens*, 86 Civ. 7376, 1988 U.S. Dist. LEXIS 552, *8-9 (S.D.N.Y. Jan. 25, 1988). Because the grievance procedures are not

---

[6] 7 NYCRR § 701.8(c) & (d).

[7] In this case, the IGP Supervisor was defendant Daniels.

7

constitutionally required, a state's violation of those procedures or its failure to enforce them does not give rise to a claim under section 1983, under the due process clause or otherwise. *Id.*

As stated above, plaintiff was allowed to exhaust his administrative remedies,[8] albeit not in the manner that plaintiff wished or perhaps not as quickly as plaintiff wished. Thus, to the extent that plaintiff claims *only* the violation of the grievance procedures that are listed in the DOCS Directives, the complaint may be dismissed.

### B. Eighth Amendment

Plaintiff also uses the term "deliberate indifference" in reference to his claims against defendant Daniels. Deliberate indifference generally relates to an Eighth Amendment claim such as the failure to protect, or the medical care claims. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976)(discussing the requirement of deliberate indifference to serious medical needs); *Hendricks v. Coughlin*, 942 F.2d 109, 112 (2d Cir. 1991)(discussing deliberate indifference in relation to

---

[8] Exhaustion of administrative remedies is required prior to an inmate bringing a federal civil rights action. 42 U.S.C. § 1997e(a). The Court would point out that if any defendant in this case had actually *prevented* plaintiff from exhausting his administrative remedies, this would be an exception to the exhaustion requirement, and plaintiff would not have been prevented from bringing a civil rights action. *See Brownell v. Krom*, 446 F.3d 305, 311-12 (2d Cir. 2006)(citation omitted). This is true even after the Supreme Court's decision in *Woodford v. Ngo*, 126 S. Ct. 2378 (2006), which held that the exhaustion requirement mandates "proper exhaustion."

In his concurring opinion in *Woodford*, Justice Breyer, specifically noted that two circuits, the *Second* Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford*] have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford*, 126 S. Ct. at 2393 (citing *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004); *Giano v. Goord*, 380 F.3d 670, 677 (2d Cir. 2004))(Breyer, J. concurring). Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a *traditional exception that the statute implicitly incorporates*." *Id.* (emphasis added). Thus, if a defendant *intentionally* prevents a plaintiff from filing a grievance, particularly with the intent of preventing plaintiff's later federal court claim, this will be an exception to the exhaustion requirement.

8

failure to protect).

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. at 106. There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). The first element is ***objective*** and measures the severity of the deprivation, while the second element is ***subjective*** and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

In order to meet the first element of the standard, plaintiff must show that he has a sufficiently serious illness or injury. *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). A medical condition has been considered "sufficiently serious" when there is a "condition of urgency," one that may result in death, degeneration, or extreme pain. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). The seriousness of a plaintiff's medical need may also be determined by reference to the effect of denying the particular treatment. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 310 (S.D.N.Y. 2001)(citation omitted). Thus, if unnecessary and wanton infliction of pain results from the denial of treatment, or if the denial of treatment causes the inmate to suffer a lifelong handicap or permanent loss, the condition may be considered "sufficiently serious." *Id.* (citing *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000)).

In order to meet the second element of the standard, plaintiff must demonstrate more than an "inadvertent" or negligent failure to provide adequate medical care. *Id.* (citing *Estelle*, 429

9

U.S. at 105-106). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id.* In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

On the surface, plaintiff's claim in this case, that defendant Daniels caused the inadequate processing of plaintiff's grievance as an "emergency," does not fit into the Eighth Amendment analysis. Plaintiff does not allege that defendant Daniels' actions, which occurred after the alleged assault, caused plaintiff any injury, and he does not even state what facts he raised in the grievance. In the beginning of the complaint, plaintiff lists various grievances that he filed with respect to these incidents. Compl. at p.2. However, in the claim against defendant Daniels, plaintiff specifies only one of the three grievance numbers (# 40101-06).

Plaintiff does not specifically state what his emergency was and why defendant Daniels' failure to process this particular grievance as an "emergency" would constitute deliberate indifference. Plaintiff never specifies to what "deliberate indifference" he refers. The Court can only assume that plaintiff *might* be claiming that defendant Daniels was "deliberately indifferent" to plaintiff's serious medical needs if she failed to process a request for medical care or treatment in a timely fashion. Although plaintiff states in his complaint that he asked for medical care on various occasions, but was not treated for his "injuries," he was examined by Dr. Whalen, and there is no indication what kind of injuries were caused or exacerbated by the alleged "delay" in

10

plaintiff's grievance.

There is actually no indication in the complaint of what was contained in the grievance to which plaintiff refers in the claim. Grievances alleging misconduct of the corrections officers who allegedly assaulted plaintiff may *not* have been "emergencies" since the assault had already occurred, however, grievances requesting immediate medical care might be classified as emergencies.[9] Plaintiff gives no indication of why defendant Daniels would have been deliberately indifferent to a serious medical need based upon her alleged decision. Plaintiff uses words such as "malicious," "sadistic," and "retaliating," against defendant Daniels, but again, there is no indication as to why her decisions could be characterized in that manner. These statements are the just the type of conclusory allegations that do not state a claim under section 1983. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)(conclusory allegations are insufficient to state a claim for relief under section 1983).

Thus, *as written*, the complaint alleges insufficient facts to state either a Due Process or an Eighth Amendment claim against defendant Daniels, and the Court will order dismissal of plaintiff's Fourth Cause of Action.

**4.     Dismissal With or Without Prejudice**

---

[9] In *Harris v. Armstrong*, 3:02-CV-665, 2006 U.S. Dist. LEXIS 14970, *29-34 (D. Conn. March 31, 2006), the court decided a very similar issue. Plaintiff had claimed that a nurse-defendant had improperly re-characterized plaintiff's "emergency" grievances as non-emergencies. Although *Harris* was before the court on a summary judgment motion, the court considered the Eighth Amendment claim separately from the simple "Failure to Comply with Grievance Procedures" claim. *Id.* The court granted summary judgment *on the merits* of the Eighth Amendment claim, stating that the plaintiff had failed to present any evidence that the defendant was deliberately indifferent to plaintiff's serious medical needs because she re-characterized his grievances. *Id.* at *29-31. The court also dismissed the due process claim as "not cognizable in this action" because the failure to comply with institutional grievance procedures does not rise to the level of a constitutional violation under section 1983. *Id.* at 32-34.

This Court is dismissing the complaint as against defendant Daniels. However because the plaintiff is *pro se*, great liberality must be afforded to him, and the Court must decide whether to dismiss the claim with or without prejudice as against this defendant. The Second Circuit has held that when a court dismisses a *pro se* action on the pleadings, the plaintiff should be given the opportunity to amend at least once when the complaint gives "any indication" that a valid claim may be stated. *Frasier v. General Electric Co.,* 930 F.2d 1004, 1007 (2d Cir. 1991).

Thus, where a *pro se* complaint is deficient, the court should look closely to determine whether the facts alleged would support a different legal theory from that which plaintiff is claiming or should allow plaintiff to amend his complaint to plead missing elements. *Id.* at 1008. Notwithstanding this liberality, plaintiff is not relieved the burden of alleging sufficient facts upon which a ***recognized*** legal claim could be based. *Lanaux v. Central New York Psychiatric Center*, 96-CV-1282 1997 U.S. Dist. LEXIS 6133, *4-5 (N.D.N.Y. April 30, 1997)(citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)), *aff'd*, 1998 U.S. App. LEXIS 12614 (2d Cir. May 4, 1998), *cert. denied*, 525 U.S. 952 (1998).

In this case, because the Grievance Program is ***not*** constitutionally required, there is no due process claim that may be brought against defendant Daniels to the extent that plaintiff is claiming merely that she violated proper grievance procedures, regardless of the method in which plaintiff states his facts. The Court will dismiss the claim with prejudice to the extent that the claim is based on a lack of due process or simply based on defendant Daniels' violation of a DOCS Directive by her failure to properly process plaintiff's grievance.

However, to the extent that plaintiff might be attempting to allege that defendant Daniels was somehow deliberately indifferent to plaintiff's serious medical needs by delaying his

grievance or by failing to file the grievance as an "emergency," the Court will dismiss without prejudice to plaintiff moving to amend the complaint to properly state a claim. As written, the complaint does not state a claim because the Court simply cannot determine upon what facts the grievance was based, and if it were a grievance asking for medical care, whether defendant Daniels would have been deliberately indifferent in failing to process the grievance on an emergency basis. However, it is possible that plaintiff could amend his complaint to plead missing elements that would state an Eighth Amendment claim.

**WHEREFORE**, based on the findings above, it is

**ORDERED** that defendant Daniels' motion to dismiss the complaint (Dkt. No. 32) is **GRANTED**, and the complaint is **DISMISSED IN ITS ENTIRETY AS TO DEFENDANT DANIELS ONLY**, and it is further

**ORDERED** that the dismissal of the complaint against defendant Daniels is **WITH PREJUDICE** as to *any Due Process claim*, and **WITHOUT PREJUDICE** as to any *Eighth Amendment* claim.

**IT IS SO ORDERED**

Dated: June 29, 2007
       Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge